THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRED JENNINGS *et al.*, Defendants-Appellants.

Second District (2nd Division)  No. 75-98

Opinion filed October 4, 1976.

Edward M. Genson, Samuel F. Adam, and Morton E. Friedman, all of Chicago, for appellants.

Gerry L. Dondanville, State's Attorney, of Geneva (Clarence Wittenstrom, Jr., Assistant State's Attorney, and Edward N. Morris, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The defendants were charged with burglary in that they, without authority, entered a motor vehicle with intent to commit a theft therein. The defendants were found guilty and Jennings and Donald Baranowski were sentenced to not less than 3 nor more than 9 years in the penitentiary and David Baranowski was sentenced to 36 months' probation.

The defendants appeal their convictions on the grounds that (1) the statute under which they were convicted (Ill. Rev. Stat. 1973, ch. 38, par. 19—1) is unconstitutional in classifying petty theft from a motor vehicle as a burglary, hence punishable by incarceration in the penitentiary for up to 20 years. This, the defendants contend, is excessive, cruel and unusual punishment and therefore violates the United States Constitution and moreover, violates the Illinois Constitution because the punishment is not proportionate to the seriousness of the offense; (2) section 19—1 of chapter 38 is also in violation of the Illinois Constitution, article I, section 11, because by making theft from a vehicle a felony whereas theft from an ordinary street or business location is only a misdemeanor, it denies the equal protection of the laws to persons who commit a theft from an automobile; (3) the trial court erred in refusing to give the instruction on burglary requested by the defense and in giving instead the standard Illinois Pattern Jury Instruction—Criminal No. 14.06 as to the offense of burglary.

The testimony at trial established the following facts. Morris Hoekstra, of Plano, Texas, parked his Lincoln automobile in the parking lot of a restaurant in West Dundee, Illinois, known as Ten Downing Street. He locked the car, which contained various pieces of luggage and other personal property, including a sleeping bag, pillows and boxes of perishable food. He then went into the restaurant. Apparently, the

parking lot was under surveillance because Roger Shiels, a special agent for the Illinois Bureau of Investigation, testified that shortly after the Hoekstra car was parked and while Shiels was seated in a vehicle with another agent, approximately 100 yards away, he saw three men, two of whom he identified at trial as Jennings and David Baranowski and the third whom he did not identify, join a fourth man, whom he subsequently identified as Donald Baranowski, in the parking lot. They stood between the Lincoln and a Chrysler, close to the restaurant, conversing, and then Jennings opened the door of the Chrysler, removed an object and partially closed the trunk. Donald Baranowski then walked over to the Lincoln and manipulated some object near the door of the Lincoln, whereby he gained entry into the Lincoln. He then began removing objects from the back seat of the Lincoln and handing them to David Baranowski who handed them to the unidentified man, who placed the objects into the Chrysler trunk. All four of the men then got into the Chrysler and drove away. Shortly afterward, they emerged from behind the restaurant building with Jennings driving the Chrysler and Donald Baranowski driving a Chevrolet. They proceeded westbound until the officers lost sight of them. Hoekstra testified he left the restaurant around 8:30 after having dinner and immediately discovered the theft and reported it to the West Dundee police. Around 10:30 or 11 o'clock that same evening Shiels and his companion observed the Chevrolet with the Baranowskis in it approaching the ramp leading from Route 31 onto I-90, whereupon he stopped the vehicle and arrested the Baranowskis. Later that same night Jennings was arrested at his home in Lake Zurich. The property described by Hoekstra as having been stolen from his car was found in the Jennings' Chrysler, except for a sleeping bag, some pillows and a brief case, which were found in the Chevrolet.

While there were some questions raised at trial relative to the legality of the arrest of the Baranowskis, this point is not pursued in this appeal and will be disregarded.

■■ The defendants argue that the statute under which they were convicted violates the constitutional stricture against cruel and unreasonable punishment because the statute makes the offense of theft from a vehicle a Class 2 felony and therefore the potential punishment for such a theft being 20 years' imprisonment is excessive and cruel. Actually, however, the sentence *inflicted* was not less than 3 nor more than 9 years. Since the eighth amendment to the United States Constitution mandates that cruel or unusual punishment shall not be "inflicted," we must judge the possible violation not by the *potential* punishment but by what punishment was actually inflicted. Judged by that standard the punishment was not cruel or unusual, bearing in mind the previous record of the two defendants who were given penitentiary sentences and the

rationale of protecting the public from such thefts. In this connection the quotation by this court in *People v. Polk* (1973), 10 Ill. App. 3d 408, 412, of the language taken from an Illinois Supreme Court case, *People ex rel. Barrett v. Bradley* (1945), 391 Ill. 169, seems appropriate here.

> " 'When the legislature has authorized a designated punishment for a specified crime, it must be regarded that its action represents the general moral ideas of the People, and the courts will not hold the punishment so authorized as either cruel and unusual or not proportioned to the nature of the offense, unless it is a cruel or degrading punishment, not known to the common law, or is a degrading punishment which had become obsolete in the state prior to the adoption of its constitution, or is so wholly disproportioned to the offense committed as to shock the moral sense of the community.' "

The punishment in the case at bar cannot be so described.

■■ The defendants also contend that equal protection of the laws as mandated by the Illinois Constitution, article I, section 11, was denied them because the punishment for theft from a vehicle is arbitrarily and unreasonably severe merely because it is from a vehicle, as compared with what the punishment would be for the same theft from another location. The defendants point out that the sentence under a charge of a theft from a vehicle could possibly be greater than would be inflicted if the whole automobile was stolen, although the value of the entire automobile would be much greater than the value of its contents. It is obvious, however, that in making theft from a vehicle a Class 2 felony, equated in seriousness with a burglary of a dwelling, the legislature was giving recognition to the status of the automobile in this age of mobility as being almost an extension of one's dwelling. Inasmuch as the public convenience and necessity requires constant and extensive use of the automobile as an adjunct of modern living it seems not unreasonable to protect it by more stringent penalties than apply to personal property lying in the open. A majority of citizens perforce carry valuable personal property and leave it in their automobiles. Such property should not be exposed for lack of serious penalties to frequent and harrassing theft. We find the classification attacked here has a reasonable basis and that it does not deny equal protection under the laws of Illinois.

A third point is raised by the defendants with regard to the instruction on burglary tendered by the defense and rejected by the trial court. In their testimony at trial the defendants claimed that they were not guilty of burglary because the unidentified fourth man of the group, observed by Officer Shiels, had induced them to break into the Lincoln and take the property therein by telling them that the Lincoln belonged to his wife and the personal property therein was actually his: The defendants claimed

they met this man—referred to by the Baranowskis as Larry Morris—in the restaurant. He did not eat with them and they all left shortly after he arrived at the restaurant and he accompanied them to the parking lot. In the parking lot, so Donald Baranowski testified, Larry Morris asked the others to "give him a hand" in removing some items from the Lincoln, which he referred to as his wife's car, and which items he wanted to store in Fred Jennings' garage. According to David Baranowski, Morris said "pull up to my wife's car" and they pulled Fred Jennings' Chrysler nearer to the Lincoln whereupon Larry Morris opened the door of the Lincoln and all three of the men helped load the property from the Lincoln into Fred Jennings' car.

At the instructions' conference the defense submitted the following instruction with regard to the charge of burglary:

"To sustain the charge of Burglary, the State must prove the following propositions:

First: That the defendant(s) knowingly entered the 1973 Lincoln automobile, the property of Morris Hoekstra; and

Second: That the defendant(s) did so with knowledge he had no authority and without reasonable belief that he had authority.

Third: That the defendant(s) did so with intent to commit the crime of theft.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant(s) guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant(s) not guilty."

The trial court refused to give this instruction and instead gave the standard IPI—Criminal on burglary, No. 14.06, reading:

"To sustain the charge of Burglary, the State must prove the following propositions:

First: That the defendant(s) knowingly entered the 1973 Lincoln automobile, the property of Morris Hoekstra; and

Second: That the defendant(s) did so without authority; and

Third: That the defendant(s) did so with intent to commit the crime of theft.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant(s) guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved

beyond a reasonable doubt, then you should find the defendant(s) not guilty."

The defense contends that since the defendants were told by Morris that the Lincoln belonged to Morris' wife and he asked them to help him remove the property in it to the Jennings' car, that they believed they had authority to enter the Lincoln, therefore they did not knowingly enter it without authority. Thus, the defendants argue, there is a question as to the defendants' state of mind when they entered the Lincoln and if they entered it believing they had authority to do so they were not guilty of burglary and the tendered instruction should have been given because it clarifies that issue, that is, the state of mind of the defendants. The State objected to the wording tendered by the defense as not being necessary to state the issue for the jury and that it put too much of a burden on the State by requiring the State to prove a certain state of mind of the defendants which existed at the time they removed the property from the Lincoln automobile. Moreover, the State says, the third paragraph of the standard IPI—Criminal instruction as actually given, takes care of the defendants' argument since the wording, "That the defendant(s) did so with intent to commit the crime of theft," answers the objection that the removal of the property could have been done innocently, since if the jury found that the entry was made with intent to commit a theft then the entry would not have been made innocently, since an innocent removal would not constitute the crime of theft. Therefore, the State argues, the jury had the opportunity under the instruction given to consider the state of mind of the defendants.

The trial court evidently agreed with this argument for he remarked, after hearing arguments on the instructions, "If your defense is correct, then they could not have entered it with intent to commit a theft." The trial court then indicated he would give the standard instruction.

■■ In order to sustain the argument the defendant must establish some ground for believing the person giving permission to enter had the authority to do so. In the present case there was no such ground. Morris— if there was such a person—(he was never located)—had no key to the Lincoln and it was testified to by Hoekstra, the owner, that he locked the car and that there was a tear in the rubber door molding after the burglary. This, combined with the testimony of Officer Shiels that he observed Donald Baranowski apparently manipulating something alongside the door of the Lincoln, is sufficient to establish that the entry was made forcibly. It is extremely unlikely that the defendants were innocently misled into forcibly entering an automobile on behalf of a person they met a few minutes before, who claimed it was his wife's car but for which he had no keys. These circumstances do not lend

themselves to an innocent construction and the supposed innocent state of mind of the defendants is so unlikely on the basis of their testimony that we cannot believe there was any real issue as to the defendants being under the delusion that they had authority to enter the Lincoln. Thus, there was no basis for the "state of mind" instruction proffered by the defendants. We think the trial court properly refused the instruction since it was not founded on credible evidence.

The judgment of the circuit court of Kane County is affirmed.

Judgment affirmed.

T. J. MORAN, P. J., and DIXON, J., concur.