# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

195

KA 10-02354

PRESENT: SCUDDER, P.J., CENTRA, PERADOTTO, LINDLEY, AND WHALEN, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                    MEMORANDUM AND ORDER

ALAN NORCUTT, DEFENDANT-APPELLANT.

---

FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (PHILIP ROTHSCHILD OF COUNSEL), FOR DEFENDANT-APPELLANT.

WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (JAMES P. MAXWELL OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Onondaga County Court (Anthony F. Aloi, J.), rendered November 10, 2010. The judgment convicted defendant, upon a jury verdict, of arson in the third degree.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: On appeal from a judgment convicting him following a jury trial of arson in the third degree (Penal Law § 150.10 [1]), defendant contends that the People failed to establish that the "1978 Terry make Trailer" (trailer) to which he set fire was a "building" as defined in the arson statute and thus that the conviction is not supported by legally sufficient evidence. We reject that contention.

A conviction is supported by legally sufficient evidence when, upon "viewing the facts in a light most favorable to the People, 'there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt' " (*People v Danielson*, 9 NY3d 342, 349; *see generally People v Bleakley*, 69 NY2d 490, 495). "A person is guilty of arson in the third degree when he intentionally damages a building or motor vehicle by starting a fire or causing an explosion" (Penal Law § 150.10 [1]). For purposes of the arson statute, a " '[b]uilding[,]' in addition to its ordinary meaning, includes any structure, vehicle or watercraft used for overnight lodging of persons, or used by persons for carrying on business therein" (§ 150.00 [1]).

"The 'ordinary meaning' of the term 'building' has been alternatively defined as 'a constructed edifice designed to stand more or less permanently, covering a space of land, usu[ally] covered by a roof and more or less completely enclosed by walls, and serving as a

dwelling' . . . , 'a structure with a roof and walls' . . . and '[a]
structure or edifice inclosing a space within its walls and usually,
but not necessarily, covered with a roof' . . . . The term generally,
though not always, implies the idea of a habitat for a person's
permanent use or an erection connected with his or her permanent use"
(*People v Fox*, 3 AD3d 577, 578, *lv denied* 2 NY3d 739).

In *Fox*, the Second Department analyzed whether a structure
erected by a group of homeless people constituted a building for
purposes of the arson statute.  That structure had "two side walls
consist[ing] of . . . fixed and unmovable fences.  The remaining two
walls consisted of carpets draped over a clothesline . . . A piece of
plywood provided additional support to one side of the structure . . .
The entrance was covered by shower curtains and blankets and the
entire shelter was covered by a [large] tarp.  The residents slept in
sleeping bags or on mattresses which were laid on carpeting on the
ground" (*id.* at 577-578).  The Court concluded "that the structure
satisfied the statutory definition of a building either because it had
been utilized for overnight lodging or because it fit[] within the
'ordinary meaning' of the term" (*id.* at 579).

Inasmuch as the trailer herein was "a constructed edifice
enclosed by walls, covered by a roof, designed to stand permanently,
and serving a useful purpose, it is included within the ordinary
meaning of the word 'building' " (*People v Fennell*, 122 AD2d 69, 70-
71, *lv denied* 68 NY2d 1000).  Indeed, the structure's walls and roof
were much more "permanent" than the carpets, shower curtains and tarp
used to create the shanty deemed a building in *Fox*.  In addition to
furnishings for sleeping, the trailer had a bathroom and a kitchen.
Moreover, the trailer was equipped with a power cord for immediate
access to power and a propane tank that could be used to power the
refrigerator and heaters.  At the time of the arson, the trailer was
being used to secure the owners' property while they were remodeling
the inside of their house.  In any event, with respect to the
trailer's character as a building in the ordinary sense of the word,
it is of no moment that no one was actually residing in the trailer on
the day of the incident (*see People v Richberg*, 56 AD2d 279, 280-281;
*see also Fennell*, 122 AD2d at 70-71).

Even assuming, arguendo, that the trailer did not fit within the
ordinary meaning of the term, we conclude that it constituted a
building under the secondary definition of building contained in the
statute, i.e., a "structure . . . used for overnight lodging of
persons, or used by persons for carrying on business therein" (Penal
Law § 150.00 [1]).  Defendant recognized that the trailer was used for
overnight lodging "on 'vacations' or weekend retreats," and it is
undisputed that defendant had previously rented the trailer as
overnight lodging for a period of four months.  Although no one was
residing in the trailer on the day of the fire, we likewise conclude
that such fact does not alter the essential character of the structure
as one used for overnight lodging.

Defendant contends that the phrase "used for overnight lodging"
requires that the structure be in current use for overnight lodging.

Otherwise, defendant posits, the statute would have set forth that a building is a structure that "could be" used for overnight lodging. In our view, it is defendant who is adding language to the statutory definition. The statute provides that a building is any structure used for overnight lodging; it does not provide that a building is any structure that is *currently* being used for overnight lodging. Inasmuch as defendant "used [the trailer] for overnight lodging" and recognized that such trailers were used for overnight lodging on vacations and weekend retreats, we conclude that the trailer was a building under the secondary definition contained in the statute.

Defendant further contends that the verdict is against the weight of the evidence because, inter alia, the jury was swayed by improper factors. Viewing the evidence in light of the elements of the crime as charged to the jury (*see Danielson*, 9 NY3d at 349), we conclude that the verdict is not against the weight of the evidence (*see generally Bleakley*, 69 NY2d at 495).

Contrary to defendant's further contention, County Court did not err in refusing to question the jurors concerning whether they may have disobeyed the court's order to avoid reading newspaper articles about the case. "[T]rial courts [have] wide flexibility in determining what, if any, steps are required to assure a defendant's right to a fair trial in light of the particular midtrial publicity and circumstances encountered, subject to appellate review for an abuse of discretion" (*People v Shulman*, 6 NY3d 1, 32, *cert denied* 547 US 1043). Here, we perceive no abuse of discretion. Indeed, we conclude that an inquiry by the court concerning a specific newspaper article would have "inevitably focus[ed] the jurors' attention on something that there was no indication any of them had seen, and might well [have] foster[ed] infelicitous speculation" (*id.* at 32).

Defendant failed to preserve for our review his contention that he was denied his constitutional right to present a defense inasmuch as he did not raise that contention in the trial court (*see People v Lane*, 7 NY3d 888, 889; *People v Baxter*, 108 AD3d 1158, 1160; *People v Dorn*, 71 AD3d 1523, 1523), and we decline to exercise our power to review that contention as a matter of discretion in the interest of justice (*see* CPL 470.15 [6] [a]).

Based on defendant's significant criminal history, we conclude that his sentence of 25 years to life as a persistent felony offender is not unduly harsh or severe. We have reviewed defendant's remaining contentions and conclude that they lack merit.

Entered:  March 28, 2014                    Frances E. Cafarell
                                            Clerk of the Court